**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                          :
In re:                                                    :    Chapter 11
                                                          :
CRP-2 Holdings AA, L.P.,                                   :    Case No. 15-24683 (DRC)
                                                          :
                                                          :
                    Debtor.[1]                            :
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLAN OF REORGANIZATION OF CRP-2 HOLDINGS AA, L.P.**
**PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

Joseph D. Frank
Frances Gecker
FrankGecker LLP
325 North LaSalle Street
Suite 625
Chicago, IL 60654
(312) 276-1400

Counsel for the Debtor and Debtor in Possession

Dated: July 21, 2015

---

[1]   The last four digits of the Debtor's taxpayer identification number are 3709.  The location of the Debtor's corporate headquarters is Two International Place, Suite 2500-AA, Boston, MA 02110.

# TABLE OF CONTENTS

Page

## INTRODUCTION

## ARTICLE I

## DEFINED TERMS AND RULES OF INTERPRETATION

| | | |
|---|---|---|
| 1.1 | Accrued Professional Compensation | 1 |
| 1.2 | Administrative Claim | 1 |
| 1.3 | Affiliate | 1 |
| 1.4 | Allowed | 1 |
| 1.5 | Allowed Claim | 2 |
| 1.6 | Amended and Restated Limited Partnership Agreement | 2 |
| 1.7 | Amended and Restated Secured Credit Facility | 2 |
| 1.8 | Amended and Restated Secured Credit Facility Documents | 2 |
| 1.9 | Avoidance Action | 2 |
| 1.10 | Ballot | 2 |
| 1.11 | Bankruptcy Code | 2 |
| 1.12 | Bankruptcy Court | 2 |
| 1.13 | Bankruptcy Rules | 2 |
| 1.14 | Bar Date | 3 |
| 1.15 | Business Day | 3 |
| 1.16 | Cash | 3 |
| 1.17 | Cause of Action | 3 |
| 1.18 | Chapter 11 Case | 3 |
| 1.19 | Claim | 3 |
| 1.20 | Claims Objection Deadline | 3 |
| 1.21 | Class | 3 |
| 1.22 | Confirmation | 3 |
| 1.23 | Confirmation Date | 3 |
| 1.24 | Confirmation Hearing | 3 |
| 1.25 | Confirmation Order | 3 |
| 1.26 | Debtor | 4 |
| 1.27 | Disclosure Statement | 4 |
| 1.28 | Disputed Claim | 4 |
| 1.29 | Disputed Interest | 4 |
| 1.30 | Effective Date | 4 |
| 1.31 | Entity | 4 |
| 1.32 | Estate | 4 |
| 1.33 | Executory Contract | 4 |
| 1.34 | Exhibit | 4 |
| 1.35 | Existing Credit Agreement | 4 |
| 1.36 | Equity Investment | 4 |

| 1.37 | Final Order | 4 |
| 1.38 | General Partner | 5 |
| 1.39 | GP Interests | 5 |
| 1.40 | General Unsecured Claim | 5 |
| 1.41 | Holder | 5 |
| 1.42 | Impaired | 5 |
| 1.43 | Interest | 5 |
| 1.44 | Lien | 5 |
| 1.45 | LP Interests | 5 |
| 1.46 | Other Priority Claim | 5 |
| 1.47 | Other Secured Claim | 5 |
| 1.48 | Person | 5 |
| 1.49 | Petition Date | 5 |
| 1.50 | Plan | 5 |
| 1.51 | Plan Supplement | 6 |
| 1.52 | Preferred Equity Interests | 6 |
| 1.53 | Priority Tax Claim | 6 |
| 1.54 | Professional | 6 |
| 1.55 | Professional Fee Claim | 6 |
| 1.56 | Professional Fee Escrow Account | 6 |
| 1.57 | Professional Fee Reserve Amount | 6 |
| 1.58 | Proof of Claim | 6 |
| 1.59 | Reinstated | 6 |
| 1.60 | REIT | 7 |
| 1.61 | Released Party | 7 |
| 1.62 | Reorganized Debtor | 7 |
| 1.63 | Retained Actions | 7 |
| 1.64 | Schedules | 7 |
| 1.65 | Secured Claim | 7 |
| 1.66 | Secured Credit Facility Claims | 7 |
| 1.67 | Securities Act | 7 |
| 1.68 | Tranche A Note | 7 |
| 1.69 | Tranche B Note | 8 |
| 1.70 | Unexpired Lease | 8 |
| 1.71 | Unimpaired | 8 |
| 1.72 | Voting Deadline | 8 |

## ARTICLE II

## TREATMENT OF UNCLASSIFIED CLAIMS

| 2.1 | Administrative Claims | 9 |
| 2.2 | Priority Tax Claims | 9 |
| 2.3 | Professional Fee Claims | 9 |

# ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

3.1     Classification And Settlement .................................................................10
3.2     Treatment Of Classes.............................................................................11
3.3     Alternative Treatment ...........................................................................13
3.4     Special Provision Regarding Unimpaired Claims ...............................13

# ARTICLE IV

## ACCEPTANCE OR REJECTION OF THIS PLAN

4.1     Acceptance By Classes Entitled To Vote .............................................13
4.2     Presumed Acceptance Or Rejection Of The Plan.................................13
4.3     Elimination Of Classes ..........................................................................13
4.4     Cramdown................................................................................................13

# ARTICLE V

## MEANS FOR IMPLEMENTATION OF THIS PLAN

5.1     Continued Legal Existence ....................................................................14
5.2     Sources Of Cash For Distribution.........................................................14
5.3     Equity Investment ..................................................................................14
5.4     Corporate Action ...................................................................................14
5.5     Preservation Of Retained Actions ........................................................14
5.6     Effectuating Documents; Further Transactions ...................................15
5.7     Exemption From Certain Transfer Taxes And Recording Fees ...........15
5.8     Further Authorization ............................................................................15

# ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS

6.1     Allowed Claims ......................................................................................15
6.2     Distributions For Claims Allowed As Of The Effective Date.............15
6.3     Interest And Penalties On Claims..........................................................15
6.4     Means Of Cash Payment .......................................................................16
6.5     Withholding And Reporting Requirements/Allocations .....................16
6.6     Preservation Of Rights...........................................................................16

# ARTICLE VII

## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

7.1     Assumption Of Executory Contracts And Unexpired Leases ...............16

7.2    Indemnification ................................................................................................17
7.3    Cure of Defaults Under Assumed Contracts ..........................................................17

## ARTICLE VIII

## CONFIRMATION AND CONSUMMATION OF THE PLAN

8.1    Condition To Confirmation ................................................................................18
8.2    Conditions To Effective Date ................................................................................18
8.3    Waiver Of Conditions ................................................................................18

## ARTICLE IX

## EFFECT OF PLAN CONFIRMATION

9.1    Binding Effect ................................................................................................19
9.2    Revesting Of Assets ................................................................................19
9.3    Compromise And Settlement Of Claims, Interests And Controversies ................19
9.4    Releases And Related Matters ................................................................19
9.5    Discharge Of The Debtor ................................................................................21
9.6    Injunction ................................................................................................21
9.7    Exculpation And Limitation Of Liability ................................................22
9.8    Term Of Bankruptcy Injunction Or Stays ................................................22
9.9    Post-Confirmation Date Retention Of Professionals ................................22

## ARTICLE X

## PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS AND INTERESTS

10.1    Disputed Claims And Interests ................................................................23
10.2    Objection Deadline ................................................................................23
10.3    Prosecution Of Objections ................................................................23
10.4    No Distributions Pending Allowance ................................................23

## ARTICLE XI

## RETENTION OF JURISDICTION

11.1    Retention Of Jurisdiction. ................................................................23

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

12.1    Payment Of Statutory Fees ................................................................25
12.2    Amendment Or Modification Of This Plan ................................................25
12.3    Severability Of Plan Provisions ................................................................25

| 12.4 | Successors And Assigns | 25 |
| 12.5 | Revocation, Withdrawal, Or Non-Consummation | 25 |
| 12.6 | Notice | 26 |
| 12.7 | Governing Law | 26 |
| 12.8 | Exhibits | 26 |
| 12.9 | Filing Of Additional Documents | 26 |
| 12.10 | Conflicts | 26 |

**EXHIBITS**

EXHIBIT A          Amended and Restated Secured Credit Facility Term Sheet

EXHIBIT B          Equity Investment Term Sheet

## INTRODUCTION

CRP-2 Holdings AA, L.P., as debtor and debtor in possession, proposes the following plan of reorganization for the resolution of the outstanding Claims against and Interests in the Debtor. Reference is made to the Disclosure Statement for a discussion of (i) the Debtor's history, business and operations, (ii) a summary and analysis of this Plan, and (iii) certain related matters, including risk factors relating to the consummation of this Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation.

## ARTICLE I

## DEFINED TERMS AND RULES OF INTERPRETATION

*Defined Terms.* As used herein, capitalized terms shall have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.1 *Accrued Professional Compensation* means, at any date, and regardless of whether such amounts are billed or unbilled, all of a Professional's accrued and unpaid fees (including success fees) and reimbursable expenses for services rendered in the Chapter 11 Case through and including such date, whether or not such Professional has filed a fee application for payment of such fees and expenses, (i) all to the extent that any such fees and expenses have not been previously paid (regardless of whether a fee application has been filed for any such amount) and (ii) after applying any retainer that has been provided by the Debtor to such Professional and not previously applied. No amount of a Professional's fees and expenses denied under a Final Order shall constitute Accrued Professional Compensation.

1.2 *Administrative Claim* means a Claim for costs and expenses of administration of the Chapter 11 Case under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, but not limited to: (a) any actual and necessary costs and expenses, incurred on or after the Petition Date and through the Effective Date, of preserving the Estate and operating the businesses of the Debtor; (b) Professional Fee Claims; (c) all fees and charges assessed against the Estate under Chapter 123 of Title 28 of the United States Code; and (d) all other claims entitled to administrative claim status pursuant to an order of the Bankruptcy Court.

1.3 *Affiliate* means, with respect to any Person, "affiliate" as defined in section 101(2) of the Bankruptcy Code as if such Person were a Debtor.

1.4 *Allowed* means, with respect to a Claim against the Debtor, except as otherwise provided herein, (a) a Claim that is (i) listed in the Schedules as of the Effective Date as neither disputed, contingent nor unliquidated, and for which no Proof of Claim has been timely filed, or (ii) evidenced by a valid Proof of Claim or request for payment of Administrative Claim, as applicable, filed by the applicable Bar Date, and as to which the Debtor or other parties-in-interest have not filed an objection to the allowance thereof by the Claims Objection

Deadline, or (b) a Claim that is Allowed under the Plan or any stipulation or settlement approved by, or Final Order of, the Bankruptcy Court; *provided, however*, that any Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court will not be considered "Allowed Claims" under the Plan. Notwithstanding the foregoing, a Claim shall not be Allowed and shall not be entitled to a distribution under the Plan to the extent it has been satisfied prior to the Effective Date. If a Claim is Allowed only in part, references to Allowed Claims include and are limited to the Allowed portion of such Claim. Notwithstanding anything to the contrary herein, no Claim that is disallowed in accordance with Bankruptcy Rule 3003 or section 502(d) of the Bankruptcy Code is Allowed and each such Claim shall be expunged without further action by the Debtor and without further notice to any party or action, approval, or order of the Bankruptcy Court. With respect to an Interest, "Allowed" means an Interest to which the Debtor or other parties in interest have not filed an objection by the Claims Objection Deadline.

1.5     ***Allowed Claim*** means an Allowed Claim of the particular type or Class described.

1.6     ***Amended and Restated Limited Partnership Agreement*** means the Amended and Restated Agreement of Limited Partnership of the Debtor dated as of August 25, 2006, as amended, modified or supplemented.

1.7     ***Amended and Restated Secured Credit Facility*** means that certain amended and restated financing facility in the aggregate principal amount of $163,723,800 to be entered into between the Reorganized Debtor and the lenders party thereto on the Effective Date on the terms and conditions set forth in the Amended and Restated Secured Credit Facility Term Sheet attached hereto as Exhibit A.

1.8     ***Amended and Restated Secured Credit Facility Documents*** means the Amended and Restated Secured Credit Facility and all documents, agreements and instruments executed or delivered in connection therewith.

1.9     ***Avoidance Action*** means any claim or Cause of Action of the Estate arising out of or maintainable pursuant to sections 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code or under any other similar applicable law, regardless of whether or not such action has been commenced prior to the Effective Date.

1.10     ***Ballot*** means each of the ballot forms distributed to each Holder of a Claim or Interest that is entitled to vote to accept or reject this Plan and on which the Holder is to indicate, among other things, acceptance or rejection of this Plan.

1.11     ***Bankruptcy Code*** means Title 11 of the United States Code, as now in effect or hereafter amended, to the extent such amendments apply to the Chapter 11 Case.

1.12     ***Bankruptcy Court*** means the United States Bankruptcy Court for the Northern District of Illinois, or any other court with jurisdiction over the Chapter 11 Case.

1.13     ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended.

1.14    ***Bar Date*** means September 18, 2015, the date by which each Holder of a Claim against the Debtor other than a governmental unit must have filed a proof of claim against the Debtor or (ii) January 18, 2016, the date by which each governmental unit with a Claim against the Debtor must have filed a proof of claim against the Debtor.

1.15    ***Business Day*** means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.16    ***Cash*** means legal tender of the United States of America and equivalents thereof.

1.17    ***Cause of Action*** means any action, proceeding, agreement, Claim, cause of action, controversy, demand, debt, right, action, Avoidance Action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, recoupment, crossclaim, counterclaim, third-party claim, indemnity claim, contribution claim or any other claim known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether pending in litigation or otherwise, in contract or in tort, in law or in equity or pursuant to any other theory of law, based in whole or in part upon any act or omission or other event occurring prior to the Effective Date.

1.18    ***Chapter 11 Case*** means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor in the Bankruptcy Court.

1.19    ***Claim*** means a "claim" as defined in section 101(5) of the Bankruptcy Code.

1.20    ***Claims Objection Deadline*** means (i) ninety (90) days following the Effective Date or (ii) such other later date that the Bankruptcy Court may establish upon a motion by the Debtor or Reorganized Debtor, which motion may be approved without a hearing and without notice to any party.

1.21    ***Class*** means a category of Claims or Interests, as described in Article III hereof.

1.22    ***Confirmation*** means the confirmation of this Plan by the Bankruptcy Court under section 1129 of the Bankruptcy Code.

1.23    ***Confirmation Date*** means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

1.24    ***Confirmation Hearing*** means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time, including any combined hearing on confirmation of the Plan and the adequacy of the Disclosure Statement.

1.25    ***Confirmation Order*** means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

1.26    *Debtor* means CRP-2 Holdings AA, L.P.

1.27    *Disclosure Statement* means the disclosure statement (including all exhibits and schedules thereto) relating to this Plan, as amended, modified or supplemented from time to time, and distributed contemporaneously herewith.

1.28    *Disputed Claim* means (a) any Claim as to which the Debtor has interposed an objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, or any Claim otherwise disputed by the Debtor, the Reorganized Debtor, or other party in interest in accordance with applicable law, which objection has not been withdrawn or determined by a Final Order, (b) any Claim scheduled by the Debtor as contingent, unliquidated, or disputed, (c) any Claim which amends a claim scheduled by the Debtor as contingent, unliquidated, or disputed, or (d) any Claim prior to it having become an Allowed Claim.

1.29    *Disputed Interest* means any Interest as to which the Debtor, the Reorganized Debtor or other party in interest has interposed an objection in accordance with applicable law, which objection has not been withdrawn or determined by a Final Order.

1.30    *Effective Date* means the Business Day this Plan becomes effective as provided in Article VIII hereof.

1.31    *Entity* means "entity" as defined in section 101(15) of the Bankruptcy Code.

1.32    *Estate* means the estate of the Debtor created under section 541 of the Bankruptcy Code.

1.33    *Executory Contract* means a contract to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.34    *Exhibit* means an exhibit annexed to either this Plan or as an appendix to the Disclosure Statement, as amended, modified or supplemented from time to time.

1.35    *Existing Credit Agreement* means that certain Amended and Restated Loan Agreement dated November 30, 2006 between the Debtor, as borrower, and JPMorgan Chase Bank, N.A., as lender, as amended by that certain Loan Modification Agreement, dated July 26, 2012, between the Debtor, as borrower, and U.S. Bank National Association, not in its individual capacity but solely in its capacity as trustee for the registered holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2006-LDP9, Commercial Mortgage Pass-Through Certificates, Series 2006-LDP9.

1.36    *Equity Investment* means REIT's contribution of cash to the Reorganized Debtor on the terms and conditions set forth in the Equity Investment Term Sheet attached hereto as Exhibit B.

1.37    *Final Order* means an order or judgment, the operation or effect of which has not been reversed, stayed, modified, or amended, and as to which order or judgment (or any

reversal, stay, modification, or amendment thereof) (a) the time to appeal, seek certiorari, or request reargument or further review or rehearing has expired and no appeal, petition for certiorari, or request for reargument or further review or rehearing has been timely filed, or (b) any appeal that has been or may be taken or any petition for certiorari or request for reargument or further review or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed, from which certiorari was sought, or to which the request was made, and no further appeal or petition for certiorari or request for reargument or further review or rehearing has been or can be taken for granted.

1.38    *General Partner* means CRP-2 Holdings GP-AA, LLC.

1.39    *GP Interests* means the general partnership interests in the Debtor held by the General Partner.

1.40    *General Unsecured Claim* means any Claim against the Debtor other than an Administrative Claim, a Priority Tax Claim, an Other Priority Claim, an Other Secured Claim or a Secured Credit Facility Claim.

1.41    *Holder* means a holder of a Claim or Interest, as applicable.

1.42    *Impaired* means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.43    *Interest* means any equity interest in the Debtor as defined in section 101(16) of the Bankruptcy Code, including all GP Interests and LP Interests.

1.44    *Lien* means any lien, security interest, pledge, title retention agreement, encumbrance, charge, mortgage or hypothecation.

1.45    *LP Interests* means all limited partnership interests in the Debtor.

1.46    *Other Priority Claim* means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim or Priority Tax Claim.

1.47    *Other Secured Claim* means any Secured Claim, other than a Secured Credit Facility Claim.

1.48    *Person* means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, or other entity.

1.49    *Petition Date* means the date on which the Debtor filed its petition for relief commencing its Chapter 11 Case.

1.50    *Plan* means this Chapter 11 plan of reorganization, including the Exhibits and all supplements, appendices, and schedules hereto, either in its current form or as the same may be altered, amended, supplemented, or modified from time to time.

1.51    ***Plan Supplement*** means the compilation of documents and forms of documents, schedules and exhibits to the Plan to be filed by the Debtor, in a form acceptable to the Debtor, no later than five (5) Business Days prior to the Voting Deadline.

1.52    ***Preferred Equity Interests*** means the preferred equity interests in the Reorganized Debtor to be distributed to REIT in exchange for the Equity Investment.

1.53    ***Priority Tax Claim*** means any Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

1.54    ***Professional*** means (a) any professional employed in this Chapter 11 Case pursuant to sections 327, 328, 363, or 1103 of the Bankruptcy Code or otherwise and (b) any professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to section 503(b)(4) of the Bankruptcy Code.

1.55    ***Professional Fee Claim*** means an Administrative Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges incurred on or after the Petition Date and prior to and including the Confirmation Date.

1.56    ***Professional Fee Escrow Account*** means an escrow account to be funded with the Professional Fee Reserve Amount by the Debtor and Reorganized Debtor on the Effective Date solely for the purpose of paying all Allowed Professional Fee Claims.

1.57    ***Professional Fee Reserve Amount*** means the aggregate Accrued Professional Compensation through the Effective Date as estimated by the Professionals in accordance with Article 2.3(c).

1.58    ***Proof of Claim*** means a written proof of Claim filed against the Debtor in the Chapter 11 Case.

1.59    ***Reinstated*** means (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim or Interest entitles the Holder of such Claim or Interest so as to leave such Claim or Interest Unimpaired in accordance with section 1124 of the Bankruptcy Code or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default, (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code, (ii) reinstating the maturity of such Claim or Interest as such maturity existed before such default, (iii) compensating the Holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law, and (iv) not otherwise altering the legal, equitable, or contractual rights to which such Claim or Interest entitles the Holder of such Claim or Interest; *provided, however*, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim or Interest is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, and affirmative covenants regarding corporate existence, prohibiting certain transactions or actions contemplated by this Plan, or conditioning such transactions or actions on certain factors, shall not be required to be cured or reinstated to achieve reinstatement.

1.60    *REIT* means Colony Realty Partners II REIT.

1.61    *Released Party* means each of the following: (a) the Debtor; (b) the General Partner; (c) CRP-2 Holdings 2, LLC; (d) CRP-2 Holdings 1, LLC; (e) REIT; (f) Colony Realty Partners II, L.P.; (g) Colony Realty Partners GP II, L.P.; (h) Colony Realty Partners GP II, LLC; and (i) with respect to each of the foregoing persons in clauses (a) through (h), such Person's current and former subsidiaries, Affiliates, members, directors, officers, principals, agents, financial advisors, restructuring advisors, accountants, investment bankers, consultants, attorneys, employees, partners, equity holders, representatives, and other professionals, in each case, only in their capacity as such.

1.62    *Reorganized Debtor* means the Debtor, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

1.63    *Retained Actions* means all claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which the Debtor or the Debtor's Estate may hold against any Person, including, without limitation, (a) claims and Causes of Action brought prior to the Effective Date, (b) claims and Causes of Action seeking the recovery of any of the Debtor's or the Reorganized Debtor's accounts receivable or other receivables or rights to payment created or arising in the ordinary course of any of the Debtor's or the Reorganized Debtor's businesses, including, without limitation, claim overpayments and tax refunds, (c) all Avoidance Actions, and (d) any such claims, Causes of Action, rights of action, suits or proceedings listed in the Disclosure Statement or any schedules filed by the Debtor in this case, if any; *provided, however*, that Retained Actions shall not include those claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, released under Article IX herein.

1.64    *Schedules* means the Debtor's schedules of assets and liabilities and statements of financial affairs, filed under section 521 of the Bankruptcy Code and the Bankruptcy Rules, as amended, supplemented, or modified.

1.65    *Secured Claim* means a Claim that is secured by a Lien on property in which the Debtor's Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code.

1.66    *Secured Credit Facility Claims* means any Secured Claims arising under the Existing Credit Agreement.

1.67    *Securities Act* means the Securities Act of 1933, as now in effect or hereafter amended.

1.68    *Tranche A Note* means the tranche "A" note in the principal amount of $90,000,000 to be made under the Amended and Restated Secured Credit Facility.

1.69   *Tranche B Note* means the tranche "B" note in the principal amount of $73,723,800 to be made under the Amended and Restated Secured Credit Facility.

1.70   *Unexpired Lease* means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.71   *Unimpaired* means a Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

1.72   *Voting Deadline* means [•], 2015 at 4:00 p.m. (Prevailing Central Time).

*Rules Of Interpretation And Computation Of Time.*  For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns; (e) all references in this Plan to Sections and Articles are references to Sections and Articles of or to this Plan; (f) the words "herein," "hereunder," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) subject to the provisions of any contract, certificates of incorporation, by-laws, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (j) in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply; (k) "including" means "including without limitation;" and (l) with reference to any distribution under this Plan, "on" a date means on or as soon as reasonably practicable after that date.

*Exhibits.*  All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court on or after the Petition Date, but in any event, no later than five (5) Business Days prior to the Voting Deadline.  Holders of Claims and Interests may obtain a copy of the Exhibits upon written request to the Debtor.  Upon their filing, the Exhibits may be inspected (a) in the office of the clerk of the Bankruptcy Court or its designee during normal business hours or (b) on the Bankruptcy Court's website at http://www.ilnb.uscourts.gov (registration required).  The documents contained in the Exhibits shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

# ARTICLE II

# TREATMENT OF UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not classified and are not entitled to vote on this Plan.

2.1     ***Administrative Claims***.  On, or as soon as reasonably practicable after, the latest of (a) the Effective Date, (b) the date on which an Administrative Claim becomes an Allowed Administrative Claim, or (c) the date on which an Allowed Administrative Claim becomes payable under any agreement relating thereto, each Holder of such Allowed Administrative Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Administrative Claim, Cash equal to the unpaid portion of such Allowed Administrative Claim.  Notwithstanding the foregoing, (w) any Professional Fee Claim shall not be paid except in accordance with an order of the Bankruptcy Court permitting such payment and in accordance with applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, (x) any Allowed Administrative Claim based on a liability incurred by the Debtor in the ordinary course of business during the Chapter 11 Case may be paid in the ordinary course of business in accordance with the terms and conditions of any agreement relating thereto, and (y) any Allowed Administrative Claim may be paid on such other terms as may be agreed to between the Holder of such Allowed Administrative Claim and the Debtor or the Reorganized Debtor.

2.2     ***Priority Tax Claims***.  The legal and equitable rights of the Holders of Priority Tax Claims are Unimpaired by the Plan.  Unless the Holder of an Allowed Priority Tax Claim and the Debtor agree to a different treatment, on the Effective Date, each Holder of an Allowed Priority Tax Claim shall have such Claim Reinstated.

2.3     ***Professional Fee Claims***.

(a)     Professionals shall submit final fee applications seeking approval of all Professional Fee Claims no later than thirty (30) days after the Effective Date.  These applications remain subject to Bankruptcy Court approval under the standards established by the Bankruptcy Code, including the requirements of sections 327, 328, 330, 331, 363, 503(b) and 1103 of the Bankruptcy Code, as applicable.  Payments to Professionals shall be made upon entry of an order approving such Professional Fee Claims.

(b)     On the Effective Date, the Debtor will establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount.  The Professional Fee Escrow Account will be maintained in trust for the Professionals.  The funds in such account will not be property of the Reorganized Debtor except that the Reorganized Debtor shall retain a residual interest to the extent the funds are not used for Allowed Professional Fee Claims.  The amount of Professional Fee Claims owing to the Professionals will be paid in Cash to such Professionals by the Reorganized Debtor, or at the Reorganized Debtor's direction, from the Professional Fee Escrow Account, without interest or other earnings therefrom, when such Claims are Allowed by Final Order; *provided, however*, that the Reorganized Debtor's liability for Professional Fee Claims shall not be limited nor be deemed to be limited to the funds

available from the Professional Fee Escrow Account. After all Professional Fee Claims have been paid in full, amounts remaining in the Professional Fee Escrow Account, if any, will be transferred to the Reorganized Debtor and serve as collateral for the obligations evidenced by the Amended and Restated Secured Credit Facility.

(c)    Professionals shall estimate their Accrued Professional Compensation prior to and as of the Effective Date and deliver such estimate to the Debtor at least five (5) days prior to the anticipated Effective Date. If a Professional does not provide such estimate, the Debtor may estimate the unbilled fees and expenses of such Professional. The total amount so estimated will constitute the Professional Fee Reserve Amount; provided that such estimate will not be considered an admission or limitation with respect to the fees and expenses of such Professional by any party. The Professional Fee Reserve Amount and the estimated Accrued Professional Compensation amounts submitted by the Professionals will be subject to review by the Debtor, and any objections to the Professional Fee Reserve Amount must be served on the Debtor prior to the Effective Date.

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

3.1    ***Classification And Settlement.*** Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtor. A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date. Each reference to "Class" or "Classes" shall include any sub-Classes of the respective Class or Classes, as applicable. Subject to the payment of Professional Fee Claims set forth in Section 2.3, the Debtor shall be responsible for satisfying the Claims and Administrative Claims against and Interests in the Debtor from the Debtor's assets.

In accordance with section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise or settlement of all Claims, Interests and controversies related to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate and Holders of Claims and Interests and is fair, equitable and reasonable.

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1......... | Other Priority Claims | Unimpaired | No (deemed to accept) |
| Class 2......... | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 3......... | Secured Credit Facility Claims | Impaired | Yes |
| Class 4......... | General Unsecured Claims | Impaired | Yes |
| Class 5......... | GP Interests in the Debtor | Impaired | Yes |
| Class 6......... | LP Interests in the Debtor | Impaired | Yes |

3.2    *Treatment Of Classes*.

(a)    *Class 1 – Other Priority Claims*

(i)    *Claims In Class:*  Class 1 consists of all Other Priority Claims that may exist against the Debtor.

(ii)    *Treatment:*  On, or as soon as reasonably practicable after, (a) the Effective Date if such Other Priority Claim is an Allowed Other Priority Claim on the Effective Date or (b) the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, each Holder of an Allowed Class 1 Other Priority Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Other Priority Claim, Cash equal to the unpaid portion of such Allowed Other Priority Claim.

(iii)    *Voting:*  Claims in Class 1 are Unimpaired, and the Holders of Allowed Class 1 Other Priority Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 1 Other Priority Claims are not entitled to vote to accept or reject this Plan.

(b)    *Class 2 – Other Secured Claims*

(i)    *Claims In Class:*  Class 2 consists of all Other Secured Claims that may exist against the Debtor.

(ii)    *Treatment:*  On, or as soon as reasonably practicable after, the Effective Date, each Holder of an Allowed Class 2 Other Secured Claim shall have such claim Reinstated.

(iii)    *Voting:*  Claims in Class 2 are Unimpaired, and the Holders of Allowed Class 2 Other Secured Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 2 Other Secured Claims are not entitled to vote to accept or reject this Plan.

(c)    *Class 3 – Secured Credit Facility Claims*

(i)    *Claims In Class:*  Class 3 consists of all Secured Credit Facility Claims.

(ii)    *Treatment:*  The Secured Credit Facility Claims shall be Allowed for all purposes in the aggregate amount of $163,723,800.  On, or as soon as reasonably

practicable after, the Effective Date, each Holder of an Allowed Class 3 Secured Credit Facility Claim shall receive its pro rata share of the Tranche A Note and the Tranche B Note under the Amended and Restated Secured Credit Facility, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, all Claims arising under the Existing Credit Agreement.

(iii)    *Voting:* Claims in Class 3 are Impaired. Pursuant to section 1126 of the Bankruptcy Code, each Holder of an Allowed Class 3 Secured Credit Facility Claim is entitled to vote to accept or reject this Plan.

(d)    *Class 4 – General Unsecured Claims*

(i)    *Claims In Class:* Class 4 consists of all General Unsecured Claims that exist against the Debtor.

(ii)    *Treatment:* Each Holder of an Allowed Class 4 General Unsecured Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Claim, Cash in the amount of such Allowed General Unsecured Claim, excluding interest accrued after the Petition Date, on the later of (a) the ninetieth day after the Effective Date or (b) the first Business Day after the ninetieth day after the Effective Date on which such Claim is Allowed.

(iii)    *Voting:* Claims in Class 4 are Impaired. Pursuant to section 1126 of the Bankruptcy Code, each Holder of an Allowed Class 4 General Unsecured Claim is entitled to vote to accept or reject this Plan.

(e)    *Class 5 – GP Interests In The Debtor*

(i)    *Interests In Class:* Class 5 consists of all GP Interests in the Debtor.

(ii)    *Treatment:* On the Effective Date, all Class 5 GP Interests in the Debtor shall be reinstated, subject to the Equity Investment, the Preferred Equity Interests, and the terms of the Amended and Restated Limited Partnership Agreement.

(iii)    *Voting:* The Interests in Class 5 are Impaired. Pursuant to section 1126 of the Bankruptcy Code, the Holder of the Allowed Class 5 GP Interests in the Debtor is entitled to vote to accept or reject this Plan.

(f)    *Class 6 – LP Interests In The Debtor*

(i)    *Interests In Class:* Class 6 consists of all LP Interests in the Debtor.

(ii)    *Treatment:* On the Effective Date, all Class 6 LP Interests in the Debtor shall be reinstated, subject to the Equity Investment, the Preferred Equity Interests, and the terms of the Amended and Restated Limited Partnership Agreement.

(iii)    *Voting:*  The Interests in Class 6 are Impaired.  Pursuant to section 1126 of the Bankruptcy Code, the Holders of the Allowed Class 6 LP Interests in the Debtor are entitled to vote to accept or reject this Plan.

3.3    ***Alternative Treatment***.  Notwithstanding any provision herein to the contrary, any Holder of an Allowed Claim may receive, instead of the distribution or treatment to which it is entitled hereunder, any other distribution or treatment to which it and the Debtor or the Reorganized Debtor may agree in writing; *provided, however,* that under no circumstance may the Debtor or Reorganized Debtor agree to provide any other distribution or treatment to any Holder of an Allowed Claim that would adversely impair the distribution or treatment provided to any other Holder of an Allowed Claim.

3.4    ***Special Provision Regarding Unimpaired Claims***.  Except as otherwise provided in this Plan, nothing shall affect the Debtor's or the Reorganized Debtor's rights and defenses, both legal and equitable, with respect to any Unimpaired Claims, including but not limited to all rights with respect to legal and equitable defenses to setoffs against or recoupments of Unimpaired Claims.

## ARTICLE IV

## ACCEPTANCE OR REJECTION OF THIS PLAN

4.1    ***Acceptance By Classes Entitled To Vote***.  Classes 3, 4, 5 and 6 are entitled to vote to accept or reject this Plan.  Classes 3, 4, 5 and 6 shall have accepted this Plan if (a) the Holders of at least two-thirds in amount of the Allowed Claims or Interests actually voting in each Class have voted to accept this Plan and (b) the Holders of more than one-half in number of the Allowed Claims or Interests actually voting in each Class have voted to accept this Plan, not counting the vote of any Holder designated under section 1126(e) of the Bankruptcy Code.  If there are no votes cast in a particular Class that is entitled to vote on the Plan, then the Plan shall be deemed accepted by such Class.

4.2    ***Presumed Acceptance Or Rejection Of The Plan***.  Classes 1 and 2 are Unimpaired.  Therefore, such Classes are deemed to have accepted this Plan by operation of law and are not entitled to vote to accept or reject the Plan.

4.3    ***Elimination Of Classes***.  To the extent applicable, any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed to have been deleted from this Plan for purposes of (a) voting to accept or reject this Plan and (b) determining whether it has accepted or rejected this Plan under section 1129(a)(8) of the Bankruptcy Code.

4.4    ***Cramdown***.  The Debtor requests Confirmation of this Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code.  The Debtor reserves the right to modify this Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

# ARTICLE V

## MEANS FOR IMPLEMENTATION OF THIS PLAN

5.1     ***Continued Legal Existence***.  Except as otherwise provided in this Plan, the Debtor will continue to exist after the Effective Date as a separate legal entity, with all the powers of such entity under applicable law in the jurisdiction in which the Debtor is formed and pursuant to the Debtor's certificate of limited partnership and Amended and Restated Limited Partnership Agreement in effect as of the Effective Date, without prejudice to any right to terminate such existence (whether by merger or otherwise) under applicable law after the Effective Date.

5.2     ***Sources Of Cash For Distribution***.  All Cash necessary for the Reorganized Debtor to make payments required by this Plan shall be obtained from (a) existing Cash balances, including balances in the Debtor's accounts, (b) the operations of the Debtor or Reorganized Debtor, and (c) the Equity Investment.

5.3     ***Equity Investment***.  On the Effective Date, REIT will contribute to the Reorganized Debtor $10 million and, thereafter, up to an additional $30 million in Cash, in its sole and absolute discretion, subject to the terms and conditions set forth in the Equity Investment Term Sheet.  In exchange for the foregoing, REIT shall receive 100% of the shares of Preferred Equity Interests in the Reorganized Debtor.  The Preferred Equity Interests will be issued pursuant to an exemption under section 4(a)(2) of the Securities Act, and may not be transferred or resold absent registration or exemption under the Securities Act or any applicable state securities law.

5.4     ***Corporate Action***.  Each of the matters provided for under this Plan involving the corporate structure of the Debtor or Reorganized Debtor or any corporate action to be taken by or required of the Debtor or Reorganized Debtor shall be deemed to have occurred and be effective as provided herein, and shall be authorized, approved and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by partners, creditors, directors or managers of the Debtor or the Reorganized Debtor.

5.5     ***Preservation Of Retained Actions***.  In accordance with section 1123(b)(3) of the Bankruptcy Code, the Reorganized Debtor will retain and may (but is not required to) enforce all Retained Actions.  After the Effective Date, the Reorganized Debtor, in its sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court.  The Reorganized Debtor or any successor, in the exercise of its sole discretion, may pursue such Retained Actions so long as it is in the best interests of the Reorganized Debtor or any successor holding such rights of action.  The failure of the Debtor to specifically list any claim, right of action, suit, proceeding or other Retained Action in this Plan or the Disclosure Statement does not, and will not be deemed to, constitute a waiver or release by the Debtor or the Reorganized Debtor of such claim, right of action, suit, proceeding or other Retained Action, and the Reorganized Debtor will retain the right to pursue such claims, rights of action, suits, proceedings and other Retained Actions in its sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial,

equitable, or otherwise) or laches will apply to such claim, right of action, suit, proceeding, or other Retained Action upon or after the Confirmation or consummation of this Plan.

5.6    ***Effectuating Documents; Further Transactions***.  The Debtor and Reorganized Debtor, and their respective designees, are authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan, or to otherwise comply with applicable law.

5.7    ***Exemption From Certain Transfer Taxes And Recording Fees***.  Pursuant to section 1146(a) of the Bankruptcy Code, any transfers from the Debtor to the Reorganized Debtor or to any other Person or entity pursuant to this Plan, or any agreement regarding the transfer of title to or ownership of any of the Debtor's real or personal property will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

5.8    ***Further Authorization***.  The Debtor and the Reorganized Debtor shall be entitled to seek such orders, judgments, injunctions, and rulings as they deem necessary to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

## ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS

6.1    ***Allowed Claims***.  Notwithstanding any provision herein to the contrary, the Debtor or the Reorganized Debtor shall make distributions only to Holders of Allowed Claims.  A Holder of a Disputed Claim shall receive a distribution on account thereof only when and to the extent that such Holder's Disputed Claim becomes an Allowed Claim.

6.2    ***Distributions For Claims Allowed As Of The Effective Date***.  Except as otherwise provided under this Plan or as ordered by the Bankruptcy Court, distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the Effective Date or as soon thereafter as is practicable.  Any distribution to be made on the Effective Date pursuant to this Plan shall be deemed as having been made on the Effective Date if such distribution is made on the Effective Date or as soon thereafter as is practicable.  Any payment or distribution required to be made under this Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

6.3    ***Interest And Penalties On Claims***.  Unless otherwise specifically provided for in this Plan or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest and penalties shall not accrue or be paid on any Claim, and no Holder of a

Claim shall be entitled to interest and penalties accruing on or after the Petition Date through the date such Claim is satisfied in accordance with the terms of this Plan.

6.4     **Means Of Cash Payment**.  Payments of Cash made pursuant to this Plan shall be made, at the option and in the sole discretion of the Reorganized Debtor, (a) by checks drawn on or wire transfer from a domestic bank selected by the Reorganized Debtor, (b) in accordance with the terms of the Amended and Restated Secured Credit Facility, or (c) by such means as are necessary or customary in a particular foreign jurisdiction.

6.5     **Withholding And Reporting Requirements/Allocations**.  In connection with this Plan and all distributions hereunder, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by any taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.  The Reorganized Debtor shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.  Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for U.S. federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

6.6     **Preservation Of Rights**.  Except as otherwise provided in this Plan, the Reorganized Debtor shall retain all rights arising under section 558 of the Bankruptcy Code or applicable nonbankruptcy laws, including, but not limited to, the right to set off against any Claim, the payments or other distributions to be made pursuant to this Plan in respect of such Claim, or claims of any nature whatsoever that the Debtor or the Reorganized Debtor may have against the Holder of such Claim; *provided, however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor of any such claim that the Debtor or the Reorganized Debtor may have against such Holder; *provided, further*, that the Holder of any Claim must assert any right to setoff prior to the Effective Date or such right shall be deemed waived on the Effective Date.  Notwithstanding any other provision of the Plan, the United States' rights to setoff and recoupment are preserved.

### ARTICLE VII

### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1     **Assumption Of Executory Contracts And Unexpired Leases**.

(a)     Except as otherwise provided in the Plan, on the Effective Date, all Executory Contracts and Unexpired Leases of the Debtor shall be deemed assumed in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease (a) has previously been rejected by order of the Bankruptcy Court in effect as of the Effective Date (which order may be the Confirmation Order); (b) is the subject of a motion to reject filed on or before the Effective Date; (c) is identified as an Executory Contract or Unexpired Lease to be rejected pursuant to the Plan Supplement before the Effective Date; or (d) expired or terminated pursuant to its own terms.

An Executory Contract or Unexpired Lease that is deemed to be assumed pursuant to the foregoing sentence shall be referred to as an "Assumed Contract."

(b)    Entry of the Confirmation Order by the Bankruptcy Court shall constitute findings by the Bankruptcy Court that (a) the Reorganized Debtor has properly provided for the cure of any defaults that might have existed, (b) each assumption is in the best interest of the Reorganized Debtor, its Estate, and all parties in interest in the Chapter 11 Case and (c) the requirements for assumption of any Executory Contract or Unexpired Lease to be assumed have been satisfied.  Except as otherwise provided in the following sentence, all cure payments under any Assumed Contract shall be made by the Reorganized Debtor on the Effective Date or as soon as practicable thereafter.  In the event of a dispute, cure payments required by section 365(b)(1) of the Bankruptcy Code shall be paid upon entry of a Final Order resolving such dispute.

7.2    *Indemnification*.  Except as otherwise specifically limited in this Plan, any obligations or rights of the Debtor or Reorganized Debtor to defend, indemnify, reimburse, or limit the liability of the Debtor's present and former members, officers, employees, agents, representatives, attorneys, accountants, financial advisors, restructuring advisors, investment bankers and consultants (the "Covered Persons") pursuant to the Debtor's or Reorganized Debtor's certificates of limited partnership, by-laws, policy of providing employee indemnification, applicable law, or specific agreement in respect of any claims, demands, suits, Causes of Action, or proceedings against such Covered Persons based upon any act or omission related to such Covered Persons' service with, for, or on behalf of the Debtor prior to the Effective Date, shall be treated as if they were Executory Contracts that are assumed under this Plan and shall survive the Effective Date and remain unaffected thereby, and shall not be discharged, irrespective of whether such defense, indemnification, reimbursement, or limitation of liability is owed in connection with an occurrence before or after the Petition Date.

7.3    *Cure of Defaults Under Assumed Contracts*.  The Reorganized Debtor shall cure any monetary defaults under any Executory Contract and Unexpired Lease to be assumed pursuant to the Plan by paying to the non-Debtor counterparty the full amount of any monetary default in the ordinary course of business.  Accordingly, no party to an Assumed Contract need file any cure claim, and the Debtor need not file any lists of any proposed cure claims, with the Bankruptcy Court.  Notwithstanding the foregoing, the Reorganized Debtor and counter-parties to Assumed Contracts reserve all their rights in the event of a dispute over the amount of a cure claim.  If there is any such dispute that cannot be resolved consensually, then either party must file with the Bankruptcy Court a request for allowance and payment of such cure claim within seventy-five (75) days from the Effective Date.  Moreover, the Reorganized Debtor shall be authorized to reject any Executory Contract or Unexpired Lease to the extent the Reorganized Debtor, in the exercise of its sound business judgment, concludes that the amount of the cure claim as determined by the Bankruptcy Court, renders assumption of such Executory Contract or Unexpired Lease unfavorable to the Reorganized Debtor.

# ARTICLE VIII

## CONFIRMATION AND CONSUMMATION OF THE PLAN

8.1    ***Condition To Confirmation***.  Confirmation of the Plan is conditioned upon the Confirmation Order being reasonably acceptable in form and substance to the Debtor.

8.2    ***Conditions To Effective Date***.  The Debtor shall request that the Confirmation Order include a finding by the Bankruptcy Court that, notwithstanding Bankruptcy Rule 3020(e), the Confirmation Order shall take effect immediately upon its entry.  The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived by the Debtor in accordance with the terms hereof:

(a)    The Confirmation Order, in form and substance reasonably satisfactory to the Debtor, shall have become a Final Order and shall, among other things, provide that the Debtor and the Reorganized Debtor are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the agreements and documents created in connection with this Plan.

(b)    All documents related to, provided for in, or contemplated by the Amended and Restated Secured Credit Facility and the Amended and Restated Limited Partnership Agreement shall have been executed and delivered, and all conditions precedent thereto shall have been satisfied (other than the occurrence of the Effective Date), which shall occur simultaneously with the satisfaction of all conditions precedent under the Amended and Restated Secured Credit Facility and the Amended and Restated Limited Partnership Agreement, as applicable.

(c)    The Amended and Restated Secured Credit Facility Documents shall be executed, fully enforceable and binding upon all parties thereto and all conditions precedent thereto shall be satisfied or waived in writing in accordance with the terms thereof.

(d)    The Debtor shall have received the Equity Investment and such funds shall be available for contribution.

(e)    The Professional Fee Escrow Account shall have been funded.

(f)    All authorizations, consents, and regulatory approvals required, if any, in connection with the consummation of this Plan shall have been obtained.

(g)    All other actions, documents, and agreements necessary to implement this Plan shall have been effected or executed.

8.3    ***Waiver Of Conditions***.  Except as expressly provided herein, each of the conditions to the Effective Date set forth herein may be waived in whole or in part by the Debtor, without any notice to parties in interest or the Bankruptcy Court and without a hearing.  The failure to satisfy or waive any condition to the Effective Date may be asserted by the Debtor regardless of the circumstances giving rise to the failure of such condition to be satisfied, including any action or inaction by the Debtor.  The failure of the Debtor to exercise any of the

foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

# ARTICLE IX

## EFFECT OF PLAN CONFIRMATION

9.1    **Binding Effect**. This Plan shall be binding upon and inure to the benefit of the Debtor, its Estate, all present and former Holders of Claims and Interests, and their respective successors and assigns, including but not limited to the Reorganized Debtor.

9.2    **Revesting Of Assets**. Except as otherwise explicitly provided in this Plan, on the Effective Date, all property comprising the Estate (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in the Reorganized Debtor, free and clear of all Claims, Liens, charges, encumbrances, rights and Interests of creditors and equity security holders. As of the Effective Date, the Reorganized Debtor may operate its businesses and use, acquire, and dispose of its property without supervision of the Bankruptcy Court, and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan or the Confirmation Order.

9.3    **Compromise And Settlement Of Claims, Interests And Controversies**. Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests and controversies related to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate and Holders of Claims and Interests and is fair, equitable and reasonable. In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtor may compromise and settle Claims against or Interests in it and Causes of Action against other Persons.

9.4    **Releases And Related Matters**

(a)    **Releases by the Debtor**

**Pursuant to section 1123(b) of the Bankruptcy Code and to the extent allowed by applicable law, and except as otherwise specifically provided in the Plan or the Plan Supplement, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious reorganization of the Debtor and the implementation of the restructuring contemplated by the Plan, on and after the Effective Date, the Released Parties are deemed released and discharged by the Debtor, the Reorganized Debtor and the Estate from any and all Claims, Interests, obligations, rights,**

suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtor, the Reorganized Debtor or the Estate have asserted or would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's restructuring, the Chapter 11 Case, the purchase, sale or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the Plan Supplement, the business or contractual arrangements between any Debtor, Reorganized Debtor, Estate or non-Debtor Affiliate and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Case, the negotiation, formulation or preparation of the Plan, the Disclosure Statement, the Plan Supplement, or related agreements, instruments or other documents, or any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; *provided, however* that nothing in this Section 9.4(a) shall be construed to release any party or entity from gross negligence, intentional fraud, willful misconduct, or criminal conduct, as determined by a Final Order of a court of competent jurisdiction.

(b)      **Third-Party Releases by Holders of Claims or Equity Interests**

Except as otherwise provided in the Plan or the Plan Supplement, as of the Effective Date, each Holder of a Claim against or Interest in the Debtor, to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Debtor, the Reorganized Debtor, the Estate, and the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative Claims assertable on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, that such Person would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's restructuring, the Chapter 11 Case, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan or the Plan Supplement, the business or contractual arrangements between the Debtor, Reorganized Debtor, Estate or non-Debtor Affiliate and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Plan Supplement, or related agreements, instruments, or other documents, or any other act or omission, transaction, agreement, event or other occurrence including or pertaining to the Debtor and taking place on or before the Effective Date, *provided, however* that nothing in this Section 9.4(b) shall be construed to release any party or entity from gross negligence, intentional fraud, willful misconduct, or criminal conduct, as determined by a Final Order of a court of competent jurisdiction; *provided further*, however, that this Section 9.4(b) shall not release the Debtor, the Reorganized Debtor, the Estate or the Released Parties from

any Cause of Action held by a governmental entity existing as of the Effective Date based on (i) the Internal Revenue Code or other domestic state, city, or municipal tax code, (ii) the environmental laws of the United States or any domestic state, city, or municipality, (iii) any criminal laws of the United States or any domestic state, city, or municipality, (iv) the Securities Exchange Act of 1934 (as now in effect or hereafter amended), the Securities Act, or other securities laws of the United States or any domestic state, city or municipality, (v) the Employee Retirement Income Security Act of 1974, as amended, or (vi) the laws and regulations of the Bureau of Customs and Border Protection of the United States Department of Homeland Security.  Notwithstanding anything to the contrary in this Section 9.4(b), a Holder of a Claim shall be deemed not to provide the releases set forth in this section if such Holder (i) votes to reject the Plan and (ii) "opts out" of the releases provided in this Section 9.4(b) of the Plan in a timely submitted, valid Ballot, *provided, however*, that nothing in this sentence shall limit the discharge contained in Section 9.5 of this Plan.  For the avoidance of doubt, nothing in this Section 9.4(b) shall release any Claims relating to actions or conduct occurring after the Effective Date and arising under or relating to the Amended and Restated Secured Credit Facility or the Amended and Restated Limited Partnership Agreement.

### 9.5   *Discharge Of The Debtor*

(a)   Upon the Effective Date, the Debtor shall be deemed discharged and released under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in section 502 of the Bankruptcy Code, whether or not (i) a Proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (ii) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code, (iii) a Claim based upon such debt is or has been disallowed by order of the Bankruptcy Court, or (iv) the Holder of a Claim based upon such debt accepted this Plan.

(b)   As of the Effective Date, except as provided in this Plan or the Confirmation Order, all Persons shall be precluded from asserting against the Debtor or the Reorganized Debtor, any other or further Claims, debts, rights, Causes of Action, claims for relief, liabilities, or equity interests relating to the Debtor based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date. In accordance with the foregoing, except as provided in this Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge of all such Claims and other debts and liabilities against the Debtor, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtor at any time, to the extent that such judgment relates to a discharged Claim.

### 9.6   *Injunction*

Except as provided in this Plan or the Confirmation Order, as of the Effective Date, all Persons that have held, currently hold, may hold, or allege that they hold, a Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, or liability that is released or discharged under this Article IX are permanently enjoined from taking any of the following actions against the Debtor, the Reorganized Debtor, the

Released Parties and their respective Affiliates or their property on account of any such released or discharged Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, or liability: (a) commencing or continuing, in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any Lien or encumbrance; (d) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to any released Person; or (e) commencing or continuing any action, in each such case in any manner, in any place, or against any Person that does not comply with or is inconsistent with the provisions of this Plan or the Confirmation Order.

### 9.7    *Exculpation And Limitation Of Liability*

None of the Released Parties shall have or incur any liability to any Entity, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the Disclosure Statement, the formulation, negotiation, or implementation of this Plan, the solicitation of acceptances of this Plan, the pursuit of Confirmation of this Plan, the Confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtor; *provided, however*, that the foregoing provisions of this exculpation shall have no effect on the liability of any Released Party that results from any such act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted gross negligence or willful misconduct. Nothing in this Plan shall affect the ability of the United States to pursue any non-Debtors to the extent allowed by non-bankruptcy law for any liabilities that may be related to any federal tax liabilities owed by the Debtor or the Debtor's Estate. Additionally, the United States may pursue police and regulatory actions or proceedings with respect to the Released Parties in the manner, and by the administrative or judicial tribunals, in which the United States could have pursued such actions or proceedings as if this bankruptcy had never been commenced.

### 9.8    *Term Of Bankruptcy Injunction Or Stays*.  Except as provided otherwise in this Plan, from and after the Effective Date, the automatic stay of section 362(a) of the Bankruptcy Code shall terminate.

### 9.9    *Post-Confirmation Date Retention Of Professionals*.  Upon the Confirmation Date, any requirement that professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate and the Reorganized Debtor will employ and pay professionals in the ordinary course of business.

## ARTICLE X

## PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS AND INTERESTS

10.1    *Disputed Claims And Interests*.  All Disputed Claims against the Debtor or Disputed Interests in the Debtor shall be subject to the provisions of this Article X.

10.2    *Objection Deadline*.  Unless otherwise ordered by the Bankruptcy Court, objections to Claims or Interests shall be filed with the Bankruptcy Court and served upon the Holders of each such Claim or Interest to which objections are made on or before the Claims Objection Deadline.  If an objection to a Claim or Interest is timely filed, a subsequent amendment to the objection shall also be deemed timely, even if filed subsequent to the deadline for filing the original Claim objection, and even if the amendment raises facts or legal theories not raised in the original Claim objection.

10.3    *Prosecution Of Objections*.  After the Confirmation Date, the Debtor or the Reorganized Debtor, as the case may be, shall have the authority to file, litigate to final judgment, settle, or withdraw objections to Disputed Claims.

10.4    *No Distributions Pending Allowance*.  No payments or distributions shall be made with respect to any Claim to the extent it is a Disputed Claim unless and until all objections to such Disputed Claim are resolved and such Disputed Claim becomes an Allowed Claim in whole or in part.

## ARTICLE XI

## RETENTION OF JURISDICTION

11.1    *Retention Of Jurisdiction*.  Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction (unless otherwise indicated) over all matters arising in, arising out of, and/or related to, the Chapter 11 Case and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)    Resolve any matters related to the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor or Reorganized Debtor may be liable and to hear, determine, and, if necessary, liquidate any Claims arising therefrom;

(b)    Decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date (which jurisdiction shall be non-exclusive as to any such non-core matters);

(c)    Enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases, and other

agreements or documents created in connection with this Plan, the Disclosure Statement, or the Confirmation Order;

(d)    Resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Plan or any contract, instrument, release, or other agreement or document that is executed or created pursuant to this Plan, or any entity's rights arising from or obligations incurred in connection with this Plan or such documents;

(e)    Modify this Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, this Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan;

(f)    Hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Plan or under sections 330, 331, 503(b), and 1129(a)(4) of the Bankruptcy Code; *provided*, *however*, that from and after the Confirmation Date the payment of fees and expenses by the Reorganized Debtor, including professional fees, shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(g)    Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation, or enforcement of this Plan or the Confirmation Order;

(h)    Adjudicate controversies arising out of the administration of the Estate or the implementation of this Plan;

(i)    Resolve any cases, controversies, suits, or disputes that may arise in connection with General Unsecured Claims, including without limitation, the Bar Date, related notice, claim objections, allowance, disallowance, estimation and distribution;

(j)    Hear and determine Causes of Action by or on behalf of the Debtor or the Reorganized Debtor;

(k)    Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked, or vacated, or distributions pursuant to this Plan are enjoined or stayed;

(l)    Determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement, or the Confirmation Order;

(m)    Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case;

(n)    Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code; and

(o)    Enter an order closing the Chapter 11 Case.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

12.1    ***Payment Of Statutory Fees***.  All fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid on the earlier of when due or the Effective Date.

12.2    ***Amendment Or Modification Of This Plan***.  Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, the Debtor reserves the right to alter, amend, or modify this Plan at any time prior to or after the Confirmation Date but prior to the substantial consummation of this Plan.  A Holder of a Claim or Interest that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim or Interest of such Holder.

12.3    ***Severability Of Plan Provisions***.  If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12.4    ***Successors And Assigns***.  This Plan shall be binding upon and inure to the benefit of the Debtor and its successors and assigns, including, without limitation, the Reorganized Debtor.  The rights, benefits, and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such entity.

12.5    ***Revocation, Withdrawal, Or Non-Consummation***.  The Debtor reserves the right to revoke or withdraw this Plan at any time prior to the Confirmation Date and to file other plans of reorganization.  If the Debtor revokes or withdraws this Plan, or if Confirmation or consummation of this Plan does not occur, then (a) this Plan shall be null and void in all respects, (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount any Claim or Class of Claims), assumption of Executory Contracts or Unexpired Leases

effected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void, and (c) nothing contained in this Plan, and no acts taken in preparation for consummation of this Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other Person, (ii) prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor, or (iii) constitute an admission of any sort by the Debtor or any other Person.

   **12.6** *Notice*.  All notices, requests, and demands to or upon the Reorganized Debtor to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

    CRP-2 HOLDINGS AA, L.P.
    Attn: Neil Waisnor
    Two International Place, Suite 2500-AA
    Boston, Massachusetts 02110
    Facsimile: (617) 235-6399

    and

    FRANKGECKER LLP
    Joseph D. Frank
    Frances Gecker
    325 North LaSalle Street
    Suite 625
    Chicago, IL 60654
    Facsimile: (312) 276-0035

    Counsel for Debtor and Debtor in Possession

   **12.7** *Governing Law*.  Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an Exhibit or schedule to this Plan or document contained in the Plan Supplement provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of New York without giving effect to the principles of conflicts of law of such jurisdiction.

   **12.8** *Exhibits*.  All Exhibits to this Plan are incorporated and are a part of this Plan as if set forth in full herein.

   **12.9** *Filing Of Additional Documents*.  On or before substantial consummation of this Plan, the Debtor shall file such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

   **12.10** *Conflicts*.  In the event that provisions of the Disclosure Statement and provisions of this Plan conflict, the terms of this Plan shall govern.

*Remainder of Page Left Intentionally Blank*

Dated: July 21, 2015
      Chicago, Illinois

           CRP-2 HOLDINGS AA, L.P.

           By: _____
               Name:  Neil Waisnor
               Title:  Vice President of Colony Realty
                        Partners GP II, LLC

<u>Exhibit A</u>

Amended and Restated Secured Credit Facility Term Sheet

| Provision | Terms |
|---|---|
| Borrower | CRP-2 Holdings AA, L.P. |
| Loan Amount | $163,723,800 |
| Loan Structure | A-Note: $90,000,000<br>B-Note: $73,723,800 |
| Collateral | All assets of the Debtor |
| Maturity Date | July 1, 2020, with two-one year extension options, subject only to 25 bps fee per extension |
| Scheduled Amortization | None |
| A-Note Coupon | 3.50% |
| A-Note Pay Rate | 3.50% |
| B-Note Coupon | 6.00% |
| B-Note Pay Rate | 0%; all interest accrued |
| B-Note / Equity Split | Prior to an event of default, all amounts received after repayment of the A-Note and Preferred Equity shall be split 85% to the B-Note and 15% to the Borrower until the B-Note and all accrued interest is paid in full. |
| Release Provisions | Assets released upon sale at 100% of the allocated A-Note amount.  All excess proceeds from asset sales will be applied to the Working Capital Escrow sufficient to stabilize remaining assets, then be applied in accordance with the waterfall described above. |
| Loan Modification Fee | $750,000 |
| Other Terms | Consistent with Existing Credit Agreement |

<u>Exhibit B</u>

Equity Investment Term Sheet

| Provision | Terms |
|---|---|
| New Capital / Preferred Equity | $40,000,000; $10,000,000 on the Effective Date and up to an additional $30,000,000 in REIT's sole and absolute discretion. |
| Return on Preferred Equity | Full amount of Preferred Equity plus a return of 10% prior to payment on the B-Note. |
| Working Capital Escrow | Existing Working Capital Escrow further funded with proceeds from the Preferred Equity investment.  All property net operating income after debt service to be deposited into the Working Capital Escrow.  The Working Capital Escrow shall be applied to cover the loan modification, Lender's loan modification costs, and any and all debt service (if property income is insufficient), tenant improvements, leasing commissions, and capital expenditures. |
| Call Protection | None |